IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALLEN BRIDGERS, | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION NO.  4:07-CV-00479-RWS |
| | § | |
| v. | § | |
| | § | |
| TDCJ-ID DIRECTOR, | § | |
| | § | |
| Respondent. | § | |

**ORDER**

Before the Court is Respondent Lumpkin's Motion to Reconsider Abatement Order. (Docket No. 115).  Respondent requests that the Court reconsider its Order (Docket No. 110) granting a stay to allow Bridgers to return to state court to exhaust his *Atkins/Moore*[1] claim. Bridgers opposes in part and agrees in part.  Docket No. 116.  For the reasons discussed below, Respondent's Motion to Reconsider is **DENIED**.

1.  Whether *Moore* is a separate claim or an extension of *Atkins*.

In his first critique of the Court's Order, Respondent complains that the Court treated Bridgers's *Moore* claim as both a separate claim and as an extension of an *Atkins* claim—which is an intellectual disability claim.  To fully evaluate the conundrum of *Moore* and its place within the larger issues of exhaustion, successiveness, *Rhines*,[2] and *Atkins*—especially considering the status of the existing case law regarding the interconnectivity of *Moore* to each of those issues—the Court treated the *Moore* claim as was required and necessary for the elements of each issue that was addressed in its Order.  Respondent does not point to any case law or well-established legal

---

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002); *Moore v. Texas*, 137 S. Ct. 1039 (2017).

[2] *Rhines v. Weber*, 544 U.S. 269 (2005).

theory that a claim, like *Moore*, cannot be both a separate issue and/or a subset of another larger issue.

Indeed, courts have treated *Moore* both ways.  For example, the Supreme Court's language in *Moore v. Texas*, 139 S. Ct. 666, 679 (2019) (*Moore II*), commenting on *Moore I* states that "[e]mphasizing the *Briseno* factors[3] over clinical factors, we said, 'creat[es] an unacceptable risk that persons with intellectual disability will be executed.' "  This language indicates that *Moore* can be a separate, independent issue as it specifically speaks to the unconstitutional application of the *Briseno* factors to an intellectual disability claim.  Conversely, the Supreme Court in *Shoop v. Hill*, 139 S. Ct. 504, 507–08 (2019), discussed that *Moore* did not become clearly established law for certain <u>aspects</u> of *Atkins* until the date of its issuance.  Similarly, the Fifth Circuit in *Busby v. Davis*, 925 F.3d 699, 715 (5th Cir. 2019), referenced *Moore* as potentially expanding *Atkins*.

Until clearer guidance from a higher court is received concerning whether *Moore* is a separate claim or just an extension/expansion of *Atkins*,[4] and the lack of any case law or guiding legal theory from Respondent, the objection is overruled.

---

[3] For the uninitiated, after *Atkins*, the Texas Supreme Court developed the *Briseno* factors found in *Ex parte Briseno*, 135 S.W.3d 1 (2004). The *Briseno* court adopted the definition of, and standards for assessing, intellectual disability contained in the 1992 (ninth) edition of the American Association on Mental Retardation manual (AAMR–9), predecessor to the current AAIDD–11 manual.  *Briseno* also incorporated the AAMR–9's requirement that adaptive deficits must be "related" to intellectual-functioning deficits, and it recited, without citation to any medical or judicial authority, seven evidentiary factors relevant to the intellectual-disability inquiry. The *Briseno* factors' purpose was to provide a framework to assist state courts in evaluating intellectual disability claims.

[4] In *Atkins*, the United States Supreme Court concluded that the execution of mentally retarded persons failed to fulfill either of the two justifications for capital punishment, i.e., retribution and deterrence, and held it is forbidden by the Eighth Amendment. *Atkins*, 536 U. S. at 318-21.  In *Moore*, 137 S. Ct. at 1048–53, the Supreme Court restricted states' abilities to circumscribe the legal definition of "intellectual disability," holding a state's determination under *Atkins* must be guided by current medical standards. The Court emphasized that its holding in *Hall* implicitly

2. <u>Whether the Court's Order exceeded its jurisdictional mandate</u>.

Respondent argues that the Court's Order exceeds its jurisdictional mandate from the Fifth Circuit regarding the parameters of Bridgers's successive habeas petition. The parties agree that the Fifth Circuit found that Bridgers made a prima facie showing that: (1) his claim has not previously been presented in a prior application to a federal court; (2) his claim relied on a new, retroactively applicable rule of constitutional law previously unavailable to him; and (3) he is intellectually disabled. *In re Bridgers*, No. 07-40900 at *2 (citing *In re Hern*, 418 F.3d 444, 444–45 (5th Cir. 2005).

Respondent's argument is that the Court impermissibly expanded the Fifth Circuit's authorization to include new legal claims. Respondent claims that Bridgers's current claims raise two new legal questions, necessarily absent from the authorization order: (1) "whether his *Moore* claim is in fact an *Atkins* claim such that he raised it in his 2007 petition," and (2) "whether he relies on new, retroactive constitutional rules that was previously unavailable to him when he filed his petition in 2007." Docket No. 115 at p. 3.

As Respondent acknowledges, *Moore* was not the law when the Texas Court of Criminal Appeals denied Bridgers's *Atkins* claim. *Moore* was also not the law when the Fifth Circuit considered Bridgers's application to file a second or successive habeas petition in 2007. The reasoning or rationale of *Moore* did not exist when Bridgers filed his 2007 petition. Bridgers's *Moore* claim, however, would meet the same test as his *Atkins* claim under *In re Hearn*, *supra*., regarding an intellectual disability claim.

---

required that states employ current medical diagnostic standards in making findings of significantly subaverage intellectual functioning and significant deficits in adaptive skills.

Respondent relies on *In re Johnson*, 935 F.3d 284 (2019), and *In re Cathey*, 857 F.3d 221 (2017)[5], both of which were in a procedurally different posture than Bridgers's case. Neither *Johnson* nor *Cathey* addresses the issue of whether Bridgers should request from the Fifth Circuit an additional authorization regarding his *Moore* claim.[6] There is a certain pointlessness to Bridgers asking the Fifth Circuit for a second authorization to proceed on his intellectual disability claim, *see In re Bridgers*, No. 07-40900, as both *Atkins* and *Moore* concern an intellectual disability claim. The test—and apparently the results—if Bridgers were to file a new or subsequent request for authorization with the Fifth Circuit would be the same as when he filed in 2007. The Court has not found any caselaw in the Fifth Circuit in the same posture as Bridgers's case and Respondent did not present any in his motion to reconsider for the Court to consider.

In its Order granting Bridgers's motion for authorization to file a successive petition pursuant to 28 U.S.C. 2244(b), the Fifth Circuit essentially ordered this Court to permit Bridgers to file a successive petition to explore the viability of his intellectual disability claim. As discussed above, both the Supreme Court and the Fifth Circuit have referred to a *Moore* claim as an <u>aspect</u> of *Atkins* and as a possible <u>expansion</u> of *Atkins*. *Shoop*, 139 S. Ct. at 507–08; *Busby*, 925 F.3d at 715 (emphasis added). If *Moore* is a part of *Atkins*—as this language suggests it is—then it should be considered in the larger frame of an intellectual disability claim. Because the Fifth Circuit

---

[5] In *In re Johnson*, 935 F.3d 284, 293–94 (5th Cir. 2019), Respondent argued that *In re Cathey* had been "effectively overruled by the Supreme Court in *Shoop v. Hill*, 139 S. Ct. 504, 507–08 (2019)," but now relies upon *In re Cathey* in its argument. The Court notes that in Respondent's October 5, 2017 Briefing, Respondent argues that *In re Cathey* does not control in this case. (Docket No. 94, p. 13–18).

[6] The Court did not find a discussion in *Blackman v. Davis*, 909 F.3d 772, 777 (5th Cir. 2018), regarding 28 U.S.C. § 2244(3)(A)'s jurisdictional bar as cited at Docket No. 115, p. 3.

found that Bridgers made the required showing under *Hern*, this Court has jurisdiction over Bridgers's claim that he is ineligible for execution because he is intellectually disabled.

In support of his argument that the Court has exceeded its jurisdictional mandate, Respondent cites to *Adams v. Thaler*, 679 F.3d 312, 321 (5th Cir. 2012), and *Felker v. Turpin*, 518 U.S. 651, 664 (1996). To the extent that Respondent is arguing that Bridgers's *Moore* claim is a second or successive claim that the Court lacks jurisdiction to consider, Respondent has not shown that the claim is successive. The Fifth Circuit has held that "a later petition is successive when it: 1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition, or 2) otherwise constitutes an abuse of the writ." *Adams*, 679 F.3d at 322 (citing *In re Cain,* 137 F.3d 234, 235 (5th Cir. 1998) (citations omitted)). Here, Bridgers's *Moore* claim was not, nor could it have been, raised in an earlier petition because it did not become clearly established law until 2017.[7] Respondent's argument is unpersuasive based on the particular facts before this Court. Respondent's objection is overruled.

3.  Whether the Court exceeded its jurisdiction under *Rhines*.

Respondent also challenges the Court's authority to issue a stay under *Rhines v. Weber*. Respondent, however, conflates retroactivity with exhaustion. The Court has not yet reached the merits of Bridgers's claims. Before the Court can determine which law must be applied to Bridgers's claims—i.e., retroactivity—the Court must first determine whether the claims are exhausted.

Under the governing federal habeas corpus statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

---

[7] In *Shoop*, 139 S. Ct. at 507–08, the Supreme Court indicated that *Moore v. Texas,* decided in 2017, did not become clearly established federal law regarding certain aspects of an *Atkins* claim until the date of its issuance.

granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).

The exhaustion requirement "is not jurisdictional but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Moore v. Quarterman*, 454 F.3d 484, 490–91 (5th Cir. 2006) (citations omitted).  "The purpose of exhaustion 'is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated, and unfounded litigation obviated before resort to federal court.'"  *Ruiz v. Quarterman*, 460 F.3d 638, 642–643 (5th Cir. 2006) (quoting *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 10 (1992)).  Exceptions exist only where there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1)(B).  A reviewing court may raise a petitioner's failure to exhaust *sua sponte. Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001).

To exhaust his state remedies under the applicable statutory framework, a habeas petitioner must fairly present "the substance of his claim to the state courts."  *Moore*, 454 F.3d at 491 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)).  A federal habeas petitioner shall not be deemed to have exhausted the remedies available in the state courts "if he has a right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

Respondent's argument returns the Court to the discussion in *Moore II* regarding the *Moore I* holding that the state court emphasized the *Briseno* factor over clinical factors, which thus "creat[es] an unacceptable risk that persons with intellectual disability will be executed."  This

language indicates that *Moore* can be a separate, independent issue as it specifically speaks to the unconstitutional application of the *Briseno* factors to an intellectual disability claim. Based on when the Supreme Court's analysis was reached in 2017 and 2019 (*Moore I* and *II* respectively), there is no doubt that Bridgers's challenge of the *Briseno* factors to his intellectual disability claim in state court—raised for the first time in this Court—has not been exhausted.

In its Order, the Court explained the factual and legal basis of how Bridgers's challenge to the application of the *Briseno* factors to his intellectual disability is unexhausted. (Docket No. 110 at 6–9). This Court refuses to intrude into the state court's purview to decide in the first instance whether Bridgers's intellectual disability claim has merit under *Moore*.[8] As Bridgers "did not fairly present the state habeas court with the same legal arguments he has presented to this Court," his *Moore* claim is unexhausted. *See Young v. Davis*, 835 F.3d 520, 527 n.35 (5th Cir. 2016) (citing *Baldwin v. Reese*, 541 U.S. 27, 29–32 (2004)).

Furthermore, the state court has the discretion to find that Bridgers's claim is an impermissible, subsequent writ and dismiss his subsequent application. But as discussed in the Court's Order, Bridgers's unexhausted claim is not patently meritless. Texas courts "ha[ve] been receptive to the prospect of reconsidering intellectual disability claims in light of *Moore*." *Henderson v. Director, TDCJ-CID*, Docket No. 89 at 3 (discussing *Ex parte Jean*, No. WR-84,327-01, 2017 WL 2859012, at *1 (Tex. Crim. App. June 28, 2017)); *see also Ex parte Henderson*, No. WR-37,658-03, 2020 Tex. Crim. App. Unpub. LEXIS 171, at *2 (Crim. App. Apr. 15, 2020) (granting *habeas* relief based on *Moore*).

---

[8] The Court clearly understands the Supreme Court's and the Fifth Circuit's mandate in *Shoop* and *Weathers v. Davis*, 915 F.3d 1025 (5th Cir. 2019), that a federal court reviewing a state court's adjudication of a pre-*Moore Atkins* claim cannot consider *Moore*. The purpose of the Court's Order (Docket No. 110) was not to consider whether relief could be granted on the merits of Bridgers' *Moore* claim at this time, but rather to resolve the issue of exhaustion.

Acknowledging the *Moore* decision, the Court of Criminal Appeals ("CCA") permitted a death row inmate to bring a successive application and reformed his sentence to life imprisonment based on his intellectual disability.  *Ex parte Sosa*, No. AP-76,674, 2017 WL 2131776 (Tex. Crim. App. May 3, 2017).  The dispositive factor is that the CCA granted habeas corpus relief on a successive application based on intellectual disability and cited *Moore* in granting relief.  More recently, the CCA remanded another habeas case with an *Atkins* claim to the trial court for further consideration in "light of the *Moore* opinion and without consideration of the *Briseno* factors." *Ex parte Jean*, No. WR-84,327-01, 2017 WL 2859012, at *1 (Tex. Crim. App. June 28, 2017).  Overall, the CCA has been receptive to the prospect of reconsidering intellectual disability claims in light of *Moore*; thus, the claim is not plainly meritless.

The question of whether Bridgers is intellectually disabled is a question of fact.  *Matamoros v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015); *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010).  The Supreme Court and Fifth Circuit have both made clear that, under the AEDPA, the proper place for developing the factual bases for federal habeas claims is the state courts.  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court).

Here, Respondent does not dispute that Bridgers must exhaust his *Moore* claim in state court before presenting it in federal court; rather Respondent merely argues that the claim is meritless and that the stay is a waste of time.  The only harm to the State caused by the granting of a stay is that the litigation might be prolonged.  The State indisputedly has an interest in

"reduc[ing] delays in the execution of state and federal criminal sentences, particularly in capital cases." *Rhines*, 544 U.S. at 276.  Yet in *Rhines* itself, the Supreme Court recognized that stays of mixed petitions were "compatible with AEDPA's purposes" in the limited circumstances it outlined. *Id.*

Based on the issues involved—namely exhaustion and § 2254(d)(1)—the Court found that the appropriate course was for this case to be stayed and abeyed so that Bridgers may file a subsequent application for writ of habeas corpus on the basis of intellectual disability in the state habeas court.  Respondent's motion does not alter that finding.  Accordingly, it is

**ORDERED** that Respondent's Motion to Reconsider Abatement Order (Docket No. 115) is **DENIED**.

**So ORDERED and SIGNED this 18th day of November, 2020.**


ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE